Victoria Ford, Appellee, v. Thomas J. Friel and Charles C. Renshaw, Trustees, Trading as Chicago Surface Lines, Appellants.

Gen. No. 43,780.

Opinion filed January 6, 1947. Released for publication January 20, 1947.

JAMES O. DWIGHT, ERWIN H. WRIGHT and ARTHUR J. DONOVAN, all of Chicago, for appellants; WILLIAM J. FLAHERTY and WILLIAM S. ALLEN, both of Chicago, of counsel.

JOSEPH D. RYAN and ARTHUR RYAN, both of Chicago, for appellee.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff brought suit for personal injuries, resulting from alleged negligence of defendants in the operation of a feeder bus, on which she was a passenger. Trial

by jury resulted in a verdict of $15,000, upon which judgment was entered. Defendants appeal.

The liability of defendants is not questioned upon this appeal. The only question presented for review is whether the verdict is excessive.

The undisputed facts are, plaintiff 66 years of age at the time of the accident, June 2, 1944, was thrown from the bus of the defendants, while alighting therefrom, upon the paved surface of the street. She landed on her back, with the upper part of her body on the sidewalk and the rest of it on the street. She was assisted by two men and taken in an automobile to the office of a doctor in the immediate vicinity. He examined her and took x-rays. She complained of injury across the small of her back and extending down through the left hip. The police took her home from the doctor's office, and with help she was put to bed, where she remained for four days, during which period she was obliged to crawl to and from the bathroom because of her pain. After several days, with difficulty and pain, she was able to get around the house and do some of her cooking. Some five days after the accident, she was taken by automobile to the same doctor's office. She complained her pain was so severe, she could scarcely move. She was able to hobble down the stairs to get to a cab. This doctor applied therapeutic treatments on several of her visits to his office, which seemed to relieve her pain. June 29, 1944, additional x-rays were taken, which disclosed that plaintiff had suffered a compression fracture of the first lumbar vertebra, and showed a dense callus area of recent origin. Another x-ray, taken about a year after the accident, showed most of the dense callus area to have disappeared but disclosed a deformed body of the vertebra, somewhat wedge shaped, and somewhat narrower in front than behind, whereas the normal vertebra is approximately the same height in front as behind. This was testified to by Dr. Vaughan for the plaintiff.

On July 5, 1944, plaintiff consulted another doctor for examination and treatment. She complained of pain over the area of the first lumbar vertebra and left sacroiliac joint. His examination disclosed a rigidity of the lumbar vertebrae and of the muscles on each side of the spine. He prescribed a brace for the lumbosacral area of the spine, which plaintiff has continuously worn since then. It seemed to relieve the pain and pressure in her back. This doctor again examined her on November 7, 1945, and testified that she showed evidence objectively, of sacroiliac pain. Injury to sacroiliac ligaments and the like, he testified, cannot be seen in x-ray pictures, and it is not necessary to receive a fracture to develop pain or injury to the same. In his opinion, the fall and the injury were sufficient to cause the symptoms and conditions then complained of by her.

Plaintiff worked as a practical nurse for private people and in institutions. She did not resume work until August 1944, and was discharged August 29, because she was unable to do her regular work due to the pain in her back. For several years preceding the accident, she earned, as a practical nurse, as much as $40 per week on private cases and $85 to $95 a month at hospitals, which included her meals and uniforms. For several months before the accident, she worked as a matron for the Lyons Manufacturing Company, earning $36 a week. She had never been involved in any accident prior to the one in question, had never sustained any injury and was in excellent health.

Defendants argue that most of the pain and suffering complained of by plaintiff is not shown by definite proof to have resulted from the accident in question but is left to mere speculation or conjecture, and that no verdict awarding damages, based upon such proof, should stand. We regard this contention without merit. A careful reading of the record convinces us that the evidence of plaintiff and the medical

testimony sufficiently established a prima facie case of injury, pain and suffering, and a causal connection between the accident and the condition complained of, which clearly made it a question of fact for the jury.

This court has been called upon many times to determine whether a verdict under a given state of facts was excessive. The decline in the purchasing power of money has frequently been considered in determining the question. *Howard v. Baltimore & O. Chicago Terminal R. Co.*, 327 Ill. App. 83; *Kavale v. Morton Salt Co.*, 242 Ill. App. 205, affirmed 329 Ill. 445. The question of damages is peculiarly one of fact for the jury, and where the jury has been correctly instructed upon the measure of damage, and it is not claimed nor shown that the size of the verdict clearly indicates it was the result of prejudice or passion on the part of the jury, the award should not be disturbed upon review. *Lanyon v. Lanquist & Illsley Co.*, 157 Ill. App. 316 (certiorari denied by the Supreme Court); *Princell v. Pickwick Greyhound Lines, Inc.*, 262 Ill. App. 298.

In no case will the scales of justice balance, when injuries, pain and suffering are placed upon the one side and monetary compensation upon the other. Her earning capacity has been seriously reduced. Her ability to do the type of work she was accustomed to has been impaired. Defendants have no right to accelerate her inability to work by injury inflicted through their negligence. She is entitled to have her inability to work develop through the normal channel of advancing years.

We are compelled to hold that the verdict is not excessive. Defendants had a fair trial. The judgment is accordingly affirmed.

*Affirmed.*

O'CONNOR, P. J., and NIEMEYER, J., concur.